## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY** | ) | |
| **AND ETHICS IN WASHINGTON,** | ) | |
| 1101 K Street, N.W., Suite 201 | ) | |
| Washington, D.C.  20005 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| **U.S. DEPARTMENT OF DEFENSE,** | ) | |
| 1400 Defense Boulevard | ) | |
| Washington, D.C. 20301-1400 | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive,

declaratory, and other appropriate relief. Plaintiff Citizens for Responsibility and Ethics in

Washington ("CREW") challenges the failure of the U.S. Department of Defense ("DOD"), to

respond to a request for documents related to public reports that the Trump White House was

pressuring DOD to award a no-bid contract to Rivada Networks, a company in which prominent

Republicans and supporters of then-President Trump had invested, to lease the agency's mid-

band spectrum.

2.      This case seeks declaratory relief that DOD is in violation of the FOIA,

specifically, 5 U.S.C. § 552(a)(3)(A), for failing to provide CREW all responsive records and 5

U.S.C. § 552(a)(6)(A), for failing to provide CREW with a determination on its request within

20 business days, as well as injunctive relief ordering defendant DOD to process and release to

CREW immediately the requested records in their entirety.

**Jurisdiction and Venue**

3.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court

also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue in

this district is proper under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.      Plaintiff CREW is a non-profit, non-partisan organization organized under section

501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens

to be informed about the activities of government officials and agencies, and to ensuring the

integrity of government officials and agencies. To advance its mission, CREW uses a

combination of research, litigation, and advocacy. As part of its research, CREW uses

government records made available to it under the FOIA. Additionally, CREW seeks to

empower citizens to have an influential voice in government decisions and in the government

decision-making process through the dissemination of information about public officials and

their actions.

5.      Defendant DOD is an agency within the meaning of 5 U.S.C. §§ 552(f)(1) and

701(b)(1). DOD has possession and control of the requested records and is responsible for

fulfilling plaintiff's FOIA request.

**Statutory and Regulatory Background**

6.      The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release

requested records to the public unless one or more specific statutory exemptions apply.

7.      An agency must respond to a party making a FOIA request within 20 working

days, notifying that party of at least the agency's determination of which of the requested records

it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

8.      An agency's failure to make this determination within 20 business days is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

9.      In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days provided that the agency gives the requester written notice setting forth the unusual circumstances and the date on which the agency expects to make a determination. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). The FOIA defines "unusual circumstances" as including the need to search for and collect responsive records from offices other than the office processing the request; the need to search for, collect, and examine a "voluminous amount of separate and distinct records"; and the need to consult with another agency. 5 U.S.C. § 552(a)(6)(B)(iii)(I)–(III).

**Factual Background**

10.      According to public reporting in October 2020, the Trump White House was putting pressure on "[s]enior officials throughout various departments and agencies" to grant to Rivada Networks—a company in which prominent Republicans and Trump supporters had invested—a no-bid contract to lease DOD's mid-band spectrum, described as "premium real estate for the booming and lucrative 5G market." Jake Tapper, Administration officials alarmed by White House push to fast track lucrative 5G spectrum contract, sources say, *CNN*, Oct. 20, 2020, https://www.cnn.com/2020/10/20/politics/white-house-5g-spectrum-no-bid-contract-rivada/indes.html. Influential Republican operative Karl Rove reportedly lobbied the White House on Rivada's behalf, "which in turn pressured top military officials to start a 5G spectrum-leasing procurement[.]" Aaron Gregg, Defense officials lukewarm on 5G spectrum-leasing plan

pushed by the White House, *Washington Post*, Nov. 25, 2020, https://www.washingtonpost.com/business/2020/11/25/rivada-pentagon-5g-leasing/. The potential award of the no-bid contract to Rivada was characterized as "'the biggest handoff of economic power to a single entity in history,'" by sources. Tapper, *CNN*, Oct. 20, 2020.

11.     DOD currently holds the 5G spectrum, which provides internet users a faster network for data, and has been described as "the crème de la crème[.]" *See, e.g.*, Erik Sherman, Defense Department '5G Nationalization' Charge Is Cover For a Wireless Industry War, *Forbes*, Dec. 3, 2020, https://www.forbes.com/sites/zengernews/2020/12/03/defense-department-5g-nationalization-charge-is-cover-for-a-wireless-industry-war/?sh=4615208f47dc. Its worth has been placed at between $50 billion and $75 billion. Gregg, *Washington Post*, Nov. 25, 2020.

12.     The outcome of DOD's decision to either lease the 5G spectrum to Rivada or sell it to a telecom company could result in "billions in revenue" for the recipient. Sherman, *Forbes*, Dec. 3, 2020. For the government, a sale of the 5G spectrum "could pour billions into the U.S. Treasury," while a lease "would produce fewer dollars at first but yield a stream of payments to the Treasury over many years." *Id.*

13.     Telecom companies reacted to the possibility of DOD leasing its 5G spectrum to Rivada by claiming it would result in President Trump's government "nationalizing" the spectrum, as ownership would remain with the government. *Id.* By acquiring the lease for the 5G spectrum, Rivada reportedly seeks to create a nationwide 5G network. Gregg, *Washington Post*, Nov. 25, 2020.

13.     For its part, DOD reportedly was not enthusiastic about the lease of the 5G spectrum, claiming it did not even know how DOD would lease the spectrum to private companies. *Id.* Reportedly some government officials raised concerns about Rivada's lack of

experience in running a telecommunications network on such a broad scale. *Id.* This disagreement over the proposal to lease the 5G spectrum has been described as "an example of the unusual ways the White House has intervened in military affairs both large and small." *Id.*

14.     Members of Congress have also raised concerns about the lease proposal. A letter from members of the Senate Armed Services Committee stated: "Any effort to lease this coveted spectrum to an entity linked to President Trump's political allies and donors by way of an unprecedented, extralegal, and non-competitive process risks jeopardizing national security while casting doubt on the Department's motivations." Gregg, *Washington Post*, Nov. 25, 2020.

*The FOIA Request At Issue*

15.     By letter dated October 21, 2020, and submitted by email on that date, CREW made a FOIA request to the Office of the Secretary of Defense ("OSD/DOD") seeking five categories of information. Specifically, CREW requested: (1) all records from July 1, 2020 to the date the request is processed relating to Rivada Networks and DOD's current spectrum allocation, the potential sharing of DOD's spectrum allocation with private industry, and/or 5G deployment; (2) any information submitted by Rivada Networks in response to DOD's "Defense Spectrum Sharing Request for Information," originally published on September 18, 2020; (3) all records from July 1, 2020, to the date the request is processed relating to any Request for Proposal ("FRP") concerning DOD's current spectrum allocation, the potential sharing of DOD's spectrum allocation with private industry, and/or 5G deployment; (4) all records from July 1, 2020, to the date the request is processed relating to any instructions, guidance, directives or requests from the White House to proceed to an RFP concerning DOD's current spectrum allocation, the potential sharing of DOD's spectrum allocation with private industry, and/or 5G deployment; and (5) all records from July 1, 2020, to the date the request is processed relating to

any contracting without providing or full and open competition concerning DOD's current spectrum allocation, the potential sharing of DOD's spectrum allocation with private industry, and/or 5G deployment.

16.     CREW clarified that its request seeks all internal communications within DOD as well as external communications between DOD officials and the following: (1) any person acting on behalf of Rivada Networks, including anyone with an email domain ending in "rivada.com"; (2) White House Chief of Staff Mark Meadows or any other White House official, including anyone with an email domain ending in "eop.gov"; (3) any Federal Communications Commission official, including anyone with an email domain ending in "fcc.gov"; and (4) any National Telecommunications and Information Administration official, including anyone with an email domain ending in "ntia.gov."

17.     CREW sought a waiver of fees associated with processing its request. In support of its request for a fee waiver CREW explained that the requested records would shed light on the issues of potential cronyism and abuse of public office relating to the proposal to lease through a no-bid contract DOD's 5G spectrum to Rivada, which are of considerable public interest.

18.     CREW further explained that it is a non-profit organization committed to protecting the public's right to be aware of the activities of government officials, to ensuring the integrity of those officials, and to highlighting and working to reduce the influence of money in politics. CREW noted its intent to analyze the information response to its request and share its analysis with the public, and that the release of the information is in not in CREW's financial interest.

19.     CREW further requested that it not be charged search or review fees because it qualifies as a member of the news media. CREW explained the ways that it routinely and systematically disseminates information to the public.

20.     By email dated October 26, 2020, OSD/DOD provided what it labeled a "clarification email" concerning CREW's request. OSD/DOD requested that CREW identify "the 'DoD Official' and names of EOP officials (in addition to Mr. Meadows) and FCC officials." According to OSD/DOD, CREW's request as submitted "is too broad and does not specify 'DoD Officials' by name(s) and or/titles which is the standard for this type of request."

21.     CREW responded to OSD/DOD's email on that same date, stating its disagreement that its request is overbroad, but also providing a non-exhaustive list of 22 DOD custodians whose records CREW proposed be searched. With respect to the request for more particular EOP, FCC, and NTIA officials, CREW explained that the FOIA does not require it to provide any more information that what it provided with its request, which as drafted "reasonably describe[s]" the records CREW seeks.

22.     To date, plaintiff CREW has received no further response from OSD/DOD.

23.     Under 5 U.S.C. § 552(a)(6)(C)(i), CREW has now effectively exhausted all applicable administrative remedies with respect to its request of DOD.

**PLAINTIFF'S CLAIM FOR RELIEF**

24.     Plaintiff repeats and re-alleges paragraphs 1-23.

25.     Plaintiff properly asked for records within the custody and control of the U.S. Department of Defense.

26.     Defendant DOD wrongfully withheld agency records requested by plaintiff by failing to comply with the statutory time limit for making a determination on plaintiff's request,

and by withholding from disclosure records responsive to plaintiff's request.

27.    Plaintiff CREW is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its October 21, 2020 FOIA request.

## Requested Relief

WHEREFORE, plaintiff respectfully requests that this Court:

(1)    Order defendant to immediately and fully process plaintiff's October 21, 2020 FOIA request to the U.S. Department of Defense and to disclose all non-exempt documents immediately to plaintiff;

(2)    Issue a declaration that plaintiff is entitled to immediate processing and disclosure of the requested records;

(3)    Provide for expeditious proceedings in this action;

(4)    Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5)    Award plaintiff its costs and reasonable attorneys' fees in this action; and

(6)    Grant such other relief as the Court may deem just and proper.

Respectfully submitted,


 /s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics

in Washington
1101 K Street, N.W., Suite 201
Washington, D.C.  20005
Phone: (202) 408-5565
Facsimile: (202) 588-5020

Dated: February 18, 2021                    *Attorneys for Plaintiff*